## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re*: **G.R.**

**No. 16-0270** (Randolph County 14-JA-5)

**FILED**

**June 21, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioners are the maternal grandfather and step-grandmother of two-year-old G.R.[1] Petitioners, by counsel Steven B. Nanners, appeal the Circuit Court of Randolph County's February 18, 2016, order granting the foster parents permanent placement of the child. The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed its response in support of the circuit court's order. The guardian ad litem ("guardian"), Heather M. Weese, filed a response on behalf of the child also in support of the circuit court's order. On appeal, petitioners argue that the circuit court erred in placing the child with the foster parents in violation of West Virginia Code § 49-4-114, which provides a preference to grandparents for child placement in abuse and neglect cases.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

G.R. was born prematurely in early 2014. At that time, the child's mother was a respondent in an abuse and neglect case related to the child's older half-siblings. Following a lengthy hospital stay due to his premature birth and certain medical issues, G.R. was discharged into foster care. By April of 2015, the parental rights of G.R.'s biological parents were terminated.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

[2]We note that West Virginia Code §§ 49-1-1 through 49-11-10 were repealed and recodified during the 2015 Regular Session of the West Virginia Legislature. The new enactment, West Virginia Code §§ 49-1-101 through 49-7-304, has minor stylistic changes and became effective ninety days after the February 19, 2015, approval date. In this memorandum decision, we apply the statutes as they existed during the pendency of the proceedings below.

In July of 2015, the circuit court appointed counsel for petitioners and the foster parents. In November of 2015, the circuit court held a contested permanent placement hearing. At that hearing, the circuit court heard evidence that the child was placed with the foster parents immediately upon his release from the hospital in mid-2014; that the foster parents attended to the child's medical needs; that the foster parents shared a strong bond with the child; that there is another child in the foster home with whom G.R. had formed, essentially, a sibling relationship; that the child called the foster parents "mommy" and "daddy"; and that the foster home was the only home this child has known.

Petitioners testified that they reside in the State of Ohio, where the child was born; that they were present at the hospital when he was born; that they followed the directives of the DHHR to obtain a home study, which showed that they were a fit and proper placement for the child; and that they were financially able to provide for the child. Petitioners argued that the statute required placement of the child with them and that they had no control over the length of time it took to complete their home study and to otherwise await the termination of the parental rights of the child's biological parents. The DHHR and guardian argued that the child had bonded with the foster parents, and the child's best interests, which trump the grandparent preference, would be to remain with the foster parents. At the conclusion of that hearing, the circuit court found that the child's best interests were served by the permanency plan of adoption by the foster parents.

In February of 2016, the circuit court entered an order granting permanent placement of the child with the foster parents. In that order, the circuit court noted the trauma the child would experience if he was taken from the only parental figures he had ever known. The circuit court also found that the child was bonded with the foster parents' daughter and that the foster parents are more familiar than anyone else with the child's medical issues. This appeal followed.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Further, our case law provides that "in the context of abuse and neglect proceedings, the circuit court is the entity charged with weighing the credibility of witnesses and rendering findings of fact." *In re Emily*, 208 W.Va.

325, 339, 540 S.E.2d 542, 556 (2000) (citing Syl. Pt. 1, in part, *In re Travis W.*, 206 W.Va. 478, 525 S.E.2d 669 (1999)); se*e also Michael D.C. v. Wanda L.C.*, 201 W.Va. 381, 388, 497 S.E.2d 531, 538 (1997) (stating that "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations.").

On appeal, petitioners argue that the circuit court erred in placing the child with the foster parents in violation of the statutory preference afforded to grandparents in abuse and neglect cases. West Virginia Code § 49-4-114 provides as follows:

> For purposes of any placement of a child for adoption by the department, the department shall first consider the suitability and willingness of any known grandparent or grandparents to adopt the child. Once grandparents who are interested in adopting the child have been identified, the department shall conduct a home study evaluation, including home visits and individual interviews by a licensed social worker. If the department determines, based on the home study evaluation, that the grandparents would be suitable adoptive parents, it shall assure that the grandparents are offered the placement of the child prior to the consideration of any other prospective adoptive parents.

In analyzing this statute, this Court has explained that the preference for placing children with grandparents remains subordinate to the children's best interests. We have held as follows:

> 4.    West Virginia Code § 49-3-1(a) [now 49-4-114(a)] provides for grandparent preference in determining adoptive placement for a child where parental rights have been terminated and also incorporates a best interests analysis within that determination by including the requirement that the DHHR find that the grandparents would be suitable adoptive parents prior to granting custody to the grandparents. The statute contemplates that placement with grandparents is presumptively in the best interests of the child, and the preference for grandparent placement may be overcome only where the record reviewed in its entirety establishes that such placement is not in the best interests of the child.

> 5.    By specifying in W[est] V[irginia] Code § 49-3-1(a)(3) [now 49-4-114(a)(3)] that the home study must show that the grandparents "would be suitable adoptive parents," the Legislature has implicitly included the requirement for an analysis by the Department of Health and Human Resources and circuit courts of the best interests of the child, given all circumstances of the case.

Syl. Pts. 4 and 5, *Napoleon S. v. Walker*, 217 W.Va. 254, 617 S.E.2d 801 (2005); *see also In re Aaron H.*, 229 W.Va. 677, 735 S.E.2d 274 (2012) (affirming circuit court order that placed child with foster parent over grandparent based upon the child's best interests.); *In re Hunter H.*, 227 W.Va. 699, 715 S.E.2d 397 (2011) (stating that grandparent preference must be considered in conjunction with our long standing jurisprudence that "the primary goal in cases involving abuse

and neglect . . . must be the health and welfare of the children." (internal citations omitted)); *In re Elizabeth F.*, 225 W.Va. 780, 696 S.E.2d 296 (2010) (holding that grandparent preference must be tempered by court's consideration of the child's best interests.); *Kristopher O. v. Mazzone*, 227 W.Va. 184, 193, 706 S.E.2d 381, 390 (2011) (stating that "compliance with federal law does not require that a child be placed with a blood relative, it only requires that such placement is considered.")

Moreover, we have previously held that

> "[o]nce a court exercising proper jurisdiction has made a determination upon sufficient proof that a child has been neglected and his natural parents were so derelict in their duties as to be unfit, the welfare of the infant is the polar star by which the discretion of the court is to be guided in making its award of legal custody." Syllabus point 8, in part, *In re Willis*, 157 W.Va. 225, 207 S.E.2d 129 (1973).

Syl. Pt. 4, *In re Elizabeth F.*, 225 W.Va. 780, 696 S.E.2d 296 (2010).

In the case sub judice, the circuit court correctly considered the evidence in its entirety in determining the proper placement for G.R. The evidence established that the child had resided with the foster parents since his discharge from the hospital after birth and had developed a bond with them over the course of approximately eighteen months (the vast majority of the child's life). While the child likely would have developed a bond with his grandparents over time, he would have to suffer the traumatic experience of being taken from the only home he has known in order to be in a position to do so. The circuit court ruled that such a traumatic experience was not in the child's best interests.

Further, as noted by the circuit court in its placement order, while the bond between the child and the foster parents "is a significant issue, it is not the only issue." There was also evidence that the child has ongoing medical needs that the foster parents had addressed for approximately eighteen continuous months before the permanent placement hearing in November of 2015. The foster parents were quite familiar with the child's needs at that time. There was also evidence that the child had developed a bond with the foster parents' daughter, his foster sister. Given the circumstances of this case, we find no error in the circuit court's order placing the child for adoption in the foster home.

For the foregoing reasons, we find no error in the circuit court's February 18, 2016, order, and we hereby affirm the same.

Affirmed.

**ISSUED**: June 21, 2016

4

**CONCURRED IN BY**:

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II